UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

WESLEY KEIGLEY,

        Plaintiff,                                         Hon. Janet T. Neff

v.                                                           Case No. 1:14-CV-249

COMMISSIONER OF SOCIAL
SECURITY,

        Defendant.
_____/

**REPORT AND RECOMMENDATION**

This is an action pursuant to Section 205(g) of the Social Security Act, 42 U.S.C. § 405(g), to review a final decision of the Commissioner of Social Security denying Plaintiff's claim for Disability Insurance Benefits under Title II of the Social Security Act. Section 405(g) limits the Court to a review of the administrative record, and provides that if the Commissioner's decision is supported by substantial evidence, it shall be conclusive. Pursuant to 28 U.S.C. § 636(b)(1)(B), authorizing United States Magistrate Judges to submit proposed findings of fact and recommendations for disposition of social security appeals, the undersigned recommends that the Commissioner's decision be **reversed and this matter remanded for further factual findings pursuant to sentence four of 42 U.S.C. § 405(g)**.

**STANDARD OF REVIEW**

The Court's jurisdiction is confined to a review of the Commissioner's decision and of the record made in the administrative hearing process. *See Willbanks v. Sec'y of Health and*

*Human Services*, 847 F.2d 301, 303 (6th Cir. 1988). The scope of judicial review in a social security case is limited to determining whether the Commissioner applied the proper legal standards in making her decision and whether there exists in the record substantial evidence supporting that decision. *See Brainard v. Sec'y of Health and Human Services*, 889 F.2d 679, 681 (6th Cir. 1989).

The Court may not conduct a de novo review of the case, resolve evidentiary conflicts, or decide questions of credibility. *See Garner v. Heckler*, 745 F.2d 383, 387 (6th Cir. 1984). It is the Commissioner who is charged with finding the facts relevant to an application for disability benefits, and her findings are conclusive provided they are supported by substantial evidence. *See* 42 U.S.C. § 405(g). Substantial evidence is more than a scintilla, but less than a preponderance. *See Cohen v. Sec'y of Dep't of Health and Human Services*, 964 F.2d 524, 528 (6th Cir. 1992) (citations omitted). It is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. *See Richardson v. Perales*, 402 U.S. 389, 401 (1971); *Bogle v. Sullivan*, 998 F.2d 342, 347 (6th Cir. 1993). In determining the substantiality of the evidence, the Court must consider the evidence on the record as a whole and take into account whatever in the record fairly detracts from its weight. *See Richardson v. Sec'y of Health and Human Services*, 735 F.2d 962, 963 (6th Cir. 1984).

As has been widely recognized, the substantial evidence standard presupposes the existence of a zone within which the decision maker can properly rule either way, without judicial interference. *See Mullen v. Bowen*, 800 F.2d 535, 545 (6th Cir. 1986) (citation omitted). This standard affords to the administrative decision maker considerable latitude, and indicates that a decision supported by substantial evidence will not be reversed simply because the evidence would have supported a contrary decision. *See Bogle*, 998 F.2d at 347; *Mullen*, 800 F.2d at 545.

## PROCEDURAL POSTURE

Plaintiff was 31years of age on his alleged disability onset date. (Tr. 168). He successfully completed high school and previously worked as a restaurant cook and production machine tender. (Tr. 31). Plaintiff applied for benefits on January 4, 2011, alleging that he had been disabled since September 28, 2010, due to ankylosing spondylitis. (Tr. 168-69, 191). Plaintiff's application was denied, after which time he requested a hearing before an Administrative Law Judge (ALJ). (Tr. 83-158). On September 10, 2012, Plaintiff appeared before ALJ James Prothro with testimony being offered by Plaintiff and a vocational expert. (Tr. 39-82). In a written decision dated October 26, 2012, the ALJ determined that Plaintiff was not disabled. (Tr. 22-33). The Appeals Council declined to review the ALJ's determination, rendering it the Commissioner's final decision in the matter. (Tr. 1-5). Plaintiff subsequently initiated this pursuant to 42 U.S.C. § 405(g), seeking judicial review of the ALJ's decision.

## RELEVANT MEDICAL HISTORY

On June 30, 2006, Plaintiff participated in a CT examination of his abdomen and pelvis the results of which were "negative." (Tr. 305). X-rays of Plaintiff's chest, taken November 10, 2006, were "negative." (Tr. 304). X-rays of Plaintiff's lumbosacral spine, taken August 1, 2007, were "negative" with "normal vertebral height, alignment and interspacing. . .no fracture, subluxation or bony destructive lesion" and "no developmental abnormality." (Tr. 303). X-rays of Plaintiff's thoracic spine, taken November 4, 2007, were "negative" with "no apparent thoracic vertebral compression deformity, fracture, subluxation, or other acute or significant abnormality" and "no significant degenerative changes." (Tr. 301). X-rays of Plaintiff's cervical spine, taken the

same day, were "negative" with "no apparent fracture, subluxation, prevertebral swelling, degenerative disc disease, spurring, or obvious bone destruction." (Tr. 302). X-rays of Plaintiff's chest, taken March 5, 2008, revealed "no acute cardiopulmonary process." (Tr. 300).

On September 10, 2008, Plaintiff reported to the emergency room complaining of back pain. (Tr. 293). Plaintiff also reported that it was "painful to take [a] deep breath." (Tr. 293). An examination revealed that Plaintiff was experiencing pain and swelling "over his spine and paraspinous region." (Tr. 294). The doctor concluded that Plaintiff was likely suffering from an "autoimmune disorder such as ankylosing spondylitis."[1] (Tr. 294). Test results completed one week later revealed that Plaintiff tested positive for the HLA-B27 gene.[2] (Tr. 297).

On March 17, 2010, Plaintiff was examined by Dr. Donald Sheill. (Tr. 343-44). Plaintiff reported that his back and neck were "increasingly stiff and painful" and "his range of motion is reduced." (Tr. 343). A physical examination revealed the following:

> The hands are free of atrophy, swelling, or deformity with the exception of the right index which is minimally thickened. Fine and gross dexterity are intact and sensory is full. He appears to make a good effort and exhibits good grips although the right is somewhat limited by the index and ring fingers.
>
> He lacks a few degrees of flexion at the right joints. The ring finger appears unremarkable and all the joints are nontender.
>
> With some extra effort he obtains a fairly good shoulder range of motion. The neck and remainder of the spine appear moderately stiff.

---

[1] Ankylosing spondylitis is "an inflammatory disease that can cause some of the vertebrae in your spine to fuse together. . .mak[ing] the spine less flexible and [which] can result in a hunched-forward posture." *See* Ankylosing Spondylitis, available at http://www.mayoclinic.org/diseases-conditions/ankylosing-spondylitis/basics/definition/con-20019766 (last visited on January 28, 2015). Moreover, "[i]f ribs are affected, it may be difficult to breathe deeply." *Id.*

[2] The HLA-B27 gene is "a perfectly normal gene found in 8% of the general population." *See* Spondylitis: Frequently Asked Questions, available at http://www.spondylitis.org/About/FAQ.aspx#hlab27 (last visited on January 28, 2015). This gene does not cause spondylitis, but people with the HLA-B27 gene "are more susceptible to getting spondylitis." *Id.*

>There are no focal areas of tenderness. His behavior in the exam room, moving about and moving from seated to supine and back up again all are consistent with ankylosing spondylitis. His chest excursion is relatively low at just 1.6 cm.[3]
>
>When standing he tends to be just a few degrees forward flexed at the waist. Also noted is considerable lateral hip pain/irritability on internal and external rotation, more notable in the right hip then the left. At the right medial ankle he has some tenderness but currently no swelling and no ligamentous laxity.
>
>The patient is alert, appropriate, and appears to make a good effort. There were no overt sad or anxious behaviors. He maintained good eye contact.

(Tr. 343-44).

Dr. Sheill diagnosed Plaintiff with ankylosing spondylitis. (Tr. 344). The doctor further noted that Plaintiff's ability to work was "quite limited" and he "should not be expected to work when reaching, bending, and twisting are required." (Tr. 344).

Treatment notes dated November 9, 2010, indicate that Plaintiff was experiencing "severely restricted" movement "in all directions" of the head and neck. (Tr. 389-90). X-rays of Plaintiff's pelvis, taken November 24, 2010, revealed evidence of bilateral sacroiliac joint ankylosis. (Tr. 381). Treatment notes dated December 15, 2010, indicate that Plaintiff was experiencing difficulty taking a deep breath due to back pain. (Tr. 399). It was further observed that Plaintiff was experiencing joint pain and stiffness and limited range of movement. (Tr. 399).

On December 21, 2010, Plaintiff was examined by family nurse practitioner Josh Brinks with West Michigan Rheumatology. (Tr. 362-64). Plaintiff reported that he was

---

[3] Chest wall expansion which measures less than 2.5 centimeters is, by at least certain sources, considered abnormal. *See* A Case of Axial Undifferentiated Spondyloarthritis Diagnosis and Management, available at http://www.nature.com/nrrheum/journal/v3/n5/full/ncprheum0486.html (last visited on January 28, 2015).

experiencing low back pain and stiffness which has "progressed up his spine." (Tr. 362). Plaintiff characterized his pain as "constant" and that "now he is to the point where he has a hard time turning his head." (Tr. 362). Plaintiff also reported, however, that "one month ago he had a 2 week course of prednisone and Flexeril which reduced his symptoms by 50%." (Tr. 362). A physical examination revealed the following:

> General appearance: NAD, pleasant.
> HEENT: pharynx and tonsils normal, no adenopathy, nose clear, sclera noninjected poor dentition with multiple caries.
> Oral cavity: moist, no apthous ulcers, or other abnormality, without ulcers.
> Neck: supple, no thyromegaly, no lymphadenopathy, No carotid, supraclavicular or brachial bruits are present.
> Lymph notes: no head, neck, supraclavicular lymphadenopathy.
> Heart: Rhythm regular, S1S2 were normal, there was no murmur, rub or S3 present.
> Lungs: Good air movement, clear to auscultation bilaterally, no wheezes, rales, or area of decrease breath sounds.
> Abdomen: soft, nontender without, localized tenderness or organomegaly. Neurologic: normal, no weakness DTRs 2+, light touch, vibratory sensation is normal in the lower extremities. Manual muscle testing is 5/5 in all major muscle groups.
> Skin: unremarkable.
> Extremities: no clubbing, no edema.
> Musculoskeletal: A formal 28 joint articular index was performed. This is recorded in the vitals section: SJC/28 denotes the number of 28 core joints with synovitis, TJC/28 denotes the number of 28 core joints with tenderness with palpation or movement. The sum of the SJC/28 + TJC/28 + patient reported global assessment of arthritis + physician reported global assessment of arthritis = the Clinical Disease Activity Index (CDAI). This has a range from 0-76. Reference: Aletaha D. Clin Exp Rheumatology 2005; 23: S100-108. Subtle synovitis in the right shoulder with some pain with forward flexion and abduction. No step-off or laxity. His tenderness throat is (sic)[4] thoracic and lumbar spine in the vertebrae as well as the musculature. SI joints are nontender. No synovitis in his hands knees

---

[4] In the Court's estimation, the beginning of this particular sentence was intended to read, "**Has tenderness throughout his** thoracic and lumbar spine. . ."

or feet. No enthesitis and no dactylitis. Tragus to wall measurement of 11.5 cm,[5] chest wall expansion 1 cm, modified Schober 3cm.[6]

(Tr. 362-363).

Brinks determined that Plaintiff's medication regimen needed to be modified. (Tr. 364). Specifically, Brinks concluded that Plaintiff "has failed NSAIDs and because he has axial skeletal involvement he needs to go on a TNF inhibitor."[7] (Tr. 364).

X-rays of Plaintiff's lumbosacral spine, taken December 22, 2010, revealed "normal vertebral body height and alignment" with no evidence of fracture or disc space narrowing, but "early radiographic signs of ankylosing spondylitis within the lumbar spine." (Tr. 366). X-rays of Plaintiff's chest were "negative." (Tr. 367). X-rays of Plaintiff's thoracic spine, also taken the same day, revealed the following:

---

[5] The tragus-to-wall test is an assessment of spinal mobility. *See* Spinal Mobility Measures in Spondyloarthritis: Application of the OMERACT Filter, available at http://www.jrheum.com/subscribers/07/04/666.html (last visited on January 28, 2015). To conduct this test, the patient must stand with his "heels and buttocks touching the wall, knees straight, shoulders back, and places the head as far back as possible, keeping the chin in." The examiner then measures the distance between the wall and the tragus of the ear. *Id.* A distance of less than 15 centimeters is, by at least certain sources, considered normal. *See* A Case of Axial Undifferentiated Spondyloarthritis Diagnosis and Management, available at http://www.nature.com/nrrheum/journal/v3/n5/full/ncprheum0486.html (last visited on January 28, 2015).

[6] The modified Schober test is another assessment of spinal mobility, specifically the ability to forward flex. *See* Spinal Mobility Measures in Spondyloarthritis: Application of the OMERACT Filter, available at http://www.jrheum.com/subscribers/07/04/666.html (last visited on January 28, 2015). To conduct this test, a mark is placed on the patient's back at the level of the posterior iliac spine on the vertebral column (at approximately the location of L5). *See* Schober's Test, available at http://www.gpnotebook.co.uk/simplepage.cfm?ID=1422917656 (last visited on January 28, 2015). Additional marks are then placed 5 centimeters below and 10 centimeters above this mark. The patient is then instructed to attempt to touch his toes. The examiner then measures the increase in distance between the latter two marks. A distance of less than 4 or 5 centimeters is considered abnormal. *Id.*; *see also*, A Case of Axial Undifferentiated Spondyloarthritis Diagnosis and Management, available at http://www.nature.com/nrrheum/journal/v3/n5/full/ncprheum0486.html (last visited on January 28, 2015).

[7] TNF Inhibitors (or Tumor-Necrosis-Factor alpha (TNF-a) blockers) are "biologic medications that have been shown to be highly effective in treating not only the arthritis of the joints but the spinal arthritis associated with ankylosing spondylitis (AS) and related diseases." *See* The Tumor-Necrosis-Factor Alpha (TNF-a) Blockers: An Overview, available at http://www.spondylitis.org/press/news/583-TNF-a-blockers-overview.aspx (last visited on January 28, 2015). The medication Enbrel is a TNF inhibitor. *Id.*

> Three views of the thoracic spine demonstrate normal vertebral body height and alignment. There is no fracture. The disc spaces are not narrowed and there are no significant degenerative changes. No bridging syndesmophytes[8] are seen within the thoracic spine.

(Tr. 377).

At the administrative hearing, Plaintiff testified that he was not presently taking any medication for his ankylosing spondylitis. (Tr. 57). Plaintiff testified that he was "in constant pain" which "makes everything that I do difficult." (Tr. 59). Plaintiff indicated that he can "barely" turn his head and "can't look up or down." (Tr. 59). Plaintiff also reported that he experiences headaches "every day." (Tr. 59). Plaintiff testified that he experiences "a burning, constant burning sharp pain" from the middle of his back up into his neck. (Tr. 67). Plaintiff reported that he was unable to walk more than "maybe a block and a half" before he would have to "stop and rest, sit down." (Tr. 68). Plaintiff reported that he experiences shortness of breath "all the time." (Tr. 68). Plaintiff reported that he is unable to sit for longer than 15 to 20 minutes at one time. (Tr. 68). Plaintiff reported that he was unable to stand in one spot for longer than 10 minutes. (Tr. 69). Plaintiff reported that he was unable to "lift comfortably" more than 10 pounds. (Tr. 69). Plaintiff testified that he was previously taking Enbrel for his condition pursuant to which he was "doing pretty good." (Tr. 70). Specifically, Plaintiff indicated that Enbrel "didn't take away the stiffness and the non-movement, but it would like make the pain less where I could function a little bit better." (Tr. 70). Plaintiff reported that without medical insurance he simply could not afford to purchase Enbrel on his own.

---

[8] One of the characteristic features of ankylosing spondylitis (AS) is bone formation. *See* Bone Formation in Ankylosing Spondylitis, available at https://www.oapublishinglondon.com/article/591 (last visited on January 28, 2015). The "pathologic progression of AS is measured by new bone formation, appearance of syndesmophytes at vertebral body margins and, eventually, ankylosis of the sacroiliac joints and vertebral column." *Id.*

(Tr. 70). Plaintiff reported that he instead takes Ibuprofen which "takes a little bit of the edge off" and is "just basically enough for me to get through the day." (Tr. 70-71).

## ANALYSIS OF THE ALJ'S DECISION

The social security regulations articulate a five-step sequential process for evaluating disability. *See* 20 C.F.R. §§ 404.1520(a-f), 416.920(a-f).[9] If the Commissioner can make a dispositive finding at any point in the review, no further finding is required. *See* 20 C.F.R. §§ 404.1520(a), 416.920(a). The regulations also provide that if a claimant suffers from a nonexertional impairment as well as an exertional impairment, both are considered in determining his residual functional capacity. *See* 20 C.F.R. §§ 404.1545, 416.945.

The burden of establishing the right to benefits rests squarely on Plaintiff's shoulders, and he can satisfy his burden by demonstrating that his impairments are so severe that he is unable to perform his previous work, and cannot, considering his age, education, and work experience, perform any other substantial gainful employment existing in significant numbers in the national economy. *See* 42 U.S.C. § 423(d)(2)(A); *Cohen*, 964 F.2d at 528. While the burden of proof shifts

---

[9]1. An individual who is working and engaging in substantial gainful activity will not be found to be "disabled" regardless of medical findings (20 C.F.R. 404.1520(b));

2. An individual who does not have a "severe impairment" will not be found "disabled" (20 C.F.R. 404.1520(c));

3. If an individual is not working and is suffering from a severe impairment which meets the duration requirement and which "meets or equals" a listed impairment in Appendix 1 of Subpart P of Regulations No. 4, a finding of "disabled" will be made without consideration of vocational factors (20 C.F.R. 404.1520(d));

4. If an individual is capable of performing work he or she has done in the past, a finding of "not disabled" must be made (20 C.F.R. 404.1520(e));

5. If an individual's impairment is so severe as to preclude the performance of past work, other factors including age, education, past work experience, and residual functional capacity must be considered to determine if other work can be performed (20 C.F.R. 404.1520(f)).

to the Commissioner at step five of the sequential evaluation process, Plaintiff bears the burden of proof through step four of the procedure, the point at which his residual functioning capacity (RFC) is determined. *See Bowen v. Yuckert*, 482 U.S. 137, 146 n.5 (1987); *Walters v. Comm'r of Soc. Sec.*, 127 F.3d 525, 528 (6th Cir. 1997) (ALJ determines RFC at step four, at which point claimant bears the burden of proof).

The ALJ determined that Plaintiff suffers from ankylosing spondylitis and headaches, severe impairments that whether considered alone or in combination with other impairments, failed to satisfy the requirements of any impairment identified in the Listing of Impairments detailed in 20 C.F.R., Part 404, Subpart P, Appendix 1. (Tr. 24-25). The ALJ next determined that Plaintiff retained the capacity to perform light work[10] subject to the following limitations: (1) he can sit for six hours during an 8-hour workday with normal breaks; (2) he can stand for only two hours during an 8-hour workday with normal breaks; and (3) he can only occasionally climb, balance, stoop, kneel, crouch, and crawl. (Tr. 25).

The ALJ found that Plaintiff cannot perform his past relevant work at which point the burden of proof shifted to the Commissioner to establish by substantial evidence that a significant number of jobs exist in the national economy which Plaintiff could perform, his limitations notwithstanding. *See Richardson*, 735 F.2d at 964. While the ALJ is not required to question a vocational expert on this issue, "a finding supported by substantial evidence that a claimant has the vocational qualifications to perform <u>specific</u> jobs" is needed to meet the burden. *O'Banner v. Sec'y*

---

[10] Light work involves lifting "no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds." 20 C.F.R. § 404.1567. Furthermore, work is considered "light" when it involves "a good deal of walking or standing," defined as "approximately 6 hours of an 8-hour workday." 20 C.F.R. § 404.1567; Titles II and XVI: Determining Capability to do Other Work - the Medical-Vocational Rules of Appendix 2, SSR 83-10, 1983 WL 31251 at *6 (S.S.A., 1983); *Van Winkle v. Commissioner of Social Security*, 29 Fed. Appx. 353, 357 (6th Cir., Feb. 6, 2002).

*of Health and Human Services*, 587 F.2d 321, 323 (6th Cir. 1978) (emphasis added). This standard requires more than mere intuition or conjecture by the ALJ that the claimant can perform specific jobs in the national economy. *See Richardson*, 735 F.2d at 964. Accordingly, ALJs routinely question vocational experts in an attempt to determine whether there exist a significant number of jobs which a particular claimant can perform, his limitations notwithstanding. Such was the case here, as the ALJ submitted interrogatories to a vocational expert.

The vocational expert testified that there existed in the state of Michigan approximately 4,400 jobs which an individual with Plaintiff's RFC could perform, such limitations notwithstanding. (Tr. 49, 78). This represents a significant number of jobs. *See Born v. Sec'y of Health and Human Services*, 923 F.2d 1168, 1174 (6th Cir. 1990); *Hall v. Bowen*, 837 F.2d 272, 274 (6th Cir. 1988); *Martin v. Commissioner of Social Security*, 170 Fed. Appx. 369, 374 (6th Cir., Mar. 1, 2006). The ALJ concluded, therefore, that Plaintiff was not entitled to disability benefits.

**I.         The ALJ's Credibility Assessment is Supported by Substantial Evidence**

Plaintiff testified at the administrative hearing that he was impaired to an extent well beyond that recognized by the ALJ. Plaintiff testified that he could "barely" turn his head and "can't look up or down." Plaintiff reported that he experiences "a burning, constant burning sharp pain" from the middle of his back up into his neck. Plaintiff reported that he experiences shortness of breath "all the time." Plaintiff also reported that he experienced difficulty walking for more than very short distances and standing/sitting for more than brief periods of time. The ALJ discounted Plaintiff's testimony for reasons which are examined in detail below. Plaintiff argues that he is

entitled to relief because the ALJ's rationale for discounting his testimony is not supported by substantial evidence.

As the Sixth Circuit has long recognized, "pain alone, if the result of a medical impairment, *may* be severe enough to constitute disability." *King v. Heckler*, 742 F.2d 968, 974 (6th Cir. 1984) (emphasis added); *see also*, *Grecol v. Halter*, 46 Fed. Appx. 773, 775 (6th Cir., Aug. 29, 2002) (same). As the relevant Social Security regulations make clear, however, a claimant's "statements about [his] pain or other symptoms will not alone establish that [he is] disabled." 20 C.F.R. § 404.1529(a); *see also*, *Walters v. Commissioner of Social Security*, 127 F.3d 525, 531 (6th Cir. 1997) (quoting 20 C.F.R. § 404.1529(a)) *Hash v. Commissioner of Social Security*, 309 Fed. Appx. 981, 989 (6th Cir., Feb. 10, 2009). Instead, as the Sixth Circuit has established, a claimant's assertions of disabling pain and limitation are evaluated pursuant to the following standard:

> First, we examine whether there is objective medical evidence of an underlying medical condition. If there is, we then examine: (1) whether objective medical evidence confirms the severity of the alleged pain arising from the condition; or (2) whether the objectively established medical condition is of such a severity that it can reasonably be expected to produce the alleged disabling pain.

*Walters*, 127 F.3d at 531 (citations omitted). This standard is often referred to as the *Duncan* standard. *See Workman v. Commissioner of Social Security*, 105 Fed. Appx. 794, 801 (6th Cir., July 29, 2004).

Accordingly, as the Sixth Circuit has repeatedly held, "subjective complaints may support a finding of disability only where objective medical evidence confirms the severity of the alleged symptoms." *Id.* (citing *Blankenship v. Bowen*, 874 F.2d 1116, 1123 (6th Cir. 1989)). However, where the objective medical evidence fails to confirm the severity of a claimant's

subjective allegations, the ALJ "has the power and discretion to weigh all of the evidence and to resolve the significant conflicts in the administrative record." *Workman*, 105 Fed. Appx. at 801 (citing *Walters*, 127 F.3d at 531).

In this respect, it is recognized that the ALJ's credibility assessment "must be accorded great weight and deference." *Workman*, 105 Fed. Appx. at 801 (citing *Walters*, 127 F.3d at 531); *see also*, *Heston v. Commissioner of Social Security*, 245 F.3d 528, 536 (6th Cir. 2001) ("[i]t is for the [Commissioner] and his examiner, as the fact-finders, to pass upon the credibility of the witnesses and weigh and evaluate their testimony"). It is not for this Court to reevaluate such evidence anew, and so long as the ALJ's determination is supported by substantial evidence, it must stand. The ALJ found Plaintiff's subjective allegations to not be fully credible, a finding that should not be lightly disregarded. *See Varley v. Sec'y of Health and Human Services*, 820 F.2d 777, 780 (6th Cir. 1987). In fact, as the Sixth Circuit recently stated, "[w]e have held that an administrative law judge's credibility findings are virtually unchallengeable." *Ritchie v. Commissioner of Social Security*, 540 Fed. Appx. 508, 511 (6th Cir., Oct. 4, 2013) (citation omitted).

Nevertheless, "blanket assertions that the claimant is not believable will not pass muster, nor will explanations as to credibility which are not consistent with the entire record and the weight of the relevant evidence." *Minor v. Commissioner of Social Security*, 2013 WL 264348 at *16 (6th Cir., Jan. 24, 2013). Furthermore, the ALJ must "consider all objective medical evidence in the record, including medical signs and laboratory findings, where such evidence is produced by acceptable medical sources." *Id.*

The ALJ relied on the following rationales in discounting Plaintiff's subjective testimony: (1) Plaintiff's receipt of unemployment benefits; (2) the extent of Plaintiff's medical

treatment; and (3) Plaintiff's daily activities. As discussed below, the ALJ has mischaracterized Plaintiff's reported activities. Nevertheless, the other reasons articulated by the ALJ are supported by the record and constitute sufficient evidence to affirm the ALJ's credibility determination.

Plaintiff does not dispute that he received unemployment benefits at dates subsequent to his alleged disability onset date. While the Court understands from a practical standpoint why a claimant would simultaneously seek to recover benefits from two distinct programs, the fact remains that courts have made clear that receipt of unemployment benefits is inconsistent with a claim of disability and, moreover, constitutes a valid rationale for rejecting a claimant's subjective allegations. *See, e.g., Bastian v. Commissioner of Social Security*, 2014 WL 5073606 at *9 (W.D. Mich., Oct. 3, 2014) (collecting cases).

As the ALJ also recognized, there are "significant gaps" in Plaintiff's treatment history. (Tr. 29). The ALJ likewise concluded that Plaintiff's allegation of disabling pain are inconsistent with his almost exclusive reliance on over-the-counter medication. (Tr. 29). While Plaintiff testified that such was the result of financial difficulties, the ALJ noted that Plaintiff was encouraged to take advantage of "low-income health care options," but opted not to do so. (Tr. 29, 299, 326). While the Court recognizes that the matter may not necessarily be as straightforward and simple as the ALJ suggests, in the absence of contrary evidence, the ALJ's observation in this regard cannot be disregarded. In sum, the ALJ's decision to discount Plaintiff's subjective allegations complies with the aforementioned legal standard and is supported by substantial evidence.

14

**II.            The ALJ Failed to Properly Evaluate the Opinion Evidence**

As noted above, Dr. Sheill diagnosed Plaintiff with ankylosing spondylitis and concluded that Plaintiff's ability to work was "quite limited" and that, moreover, he was unable to perform jobs requiring him to perform reaching, bending, or twisting. The vocational expert testified that if Plaintiff were limited to this extent there did not exist any jobs which he could perform. (Tr. 80). The ALJ afforded "little weight" to Dr. Sheill's opinion. Plaintiff argues that he is entitled to relief because the ALJ's rationale for discounting Dr. Sheill's opinion is not supported by substantial evidence. The Court agrees.

Because Dr. Sheill examined Plaintiff on only one occasion, his opinion is not entitled to any particular deference. *See, e.g.*, *Kornecky v. Commissioner of Social Security*, 167 Fed. Appx. 496, 506-07 (6th Cir. 2006). Nevertheless, the ALJ is required to evaluate the opinion offered by a non-treating physician pursuant to the following factors: (1) length of the treatment relationship and frequency of the examination, (2) nature and extent of the treatment relationship, (3) supportability of the opinion, (4) consistency of the opinion with the record as a whole, (5) the specialization of the treating source, and (6) other relevant factors. *Gayheart v. Commissioner of Social Security*, 710 F.3d 365, 376 (citing 20 C.F.R. § 404.1527). While the ALJ is not required to explicitly discuss each of these factors, the record must nevertheless reflect that the ALJ considered those factors relevant to his assessment. *See, e.g., Oldham v. Astrue*, 509 F.3d 1254, 1258 (10th Cir. 2007); *Undheim v. Barnhart*, 214 Fed. Appx. 448, 450 (5th Cir., Jan. 19, 2007).

In discounting Dr. Sheill's opinion, the ALJ relied on the following rationale: (1) the doctor's opinion was neither supported by the medical evidence nor Plaintiff's reported activities; (2) the doctor's opinion was "vague and nonspecific"; and (3) the doctor "seem[ed] to uncritically

15

accept as true [Plaintiff's] subjective report of limitations." (Tr. 30). These reasons, however, do not survive scrutiny.

First, the doctor's opinion enjoys ample support in the medical record. Plaintiff was diagnosed with ankylosing spondylitis long before his encounter with Dr. Sheill. As early as 2008, it was reported that Plaintiff was experiencing breathing difficulty as well as pain and swelling throughout his spine and paraspinous region. Dr. Sheill's opinions are supported by the results of his own examination. Subsequent treatment notes reiterate that Plaintiff was experiencing difficulty breathing, joint pain and stiffness, and limited range of movement. As for Plaintiff's reported activities, the ALJ has grossly mischaracterized such. While the ALJ concluded that Plaintiff engaged in an incredible amount of activity, without difficulty or limitation, a review of the evidence in question reveals something quite different. Plaintiff reported that he engaged in a limited amount of sporadic activity, but that he was unable to turn his head fully, bend-over, extend his arms over his head, or stand/sit for long periods of time. (Tr. 217-24, 254-61). Dr. Sheill's opinion is completely consistent with Plaintiff's reported activities.

As for the ALJ's contention that Dr. Sheill's opinion is "vague and nonspecific," the Court is not persuaded. A medical opinion is defined as "statements from physicians and psychologists or other acceptable medical sources that reflect judgments about the nature and severity of your impairment(s), including your symptoms, diagnosis and prognosis, what you can still do despite impairment(s), and your physical or mental restrictions." 20 C.F.R. §§ 404.1527(a)(2); 416.927(a)(2). While Dr. Sheill could certainly have articulated his opinion with more detail and clarity, the doctor's opinion fits within this definition. Moreover, the doctor's opinion was sufficiently clear for the vocational expert to conclude that if Plaintiff were limited to the extent

articulated by Dr. Sheill, there existed no work which Plaintiff could perform. (Tr. 80). If the doctor's opinion was as vague or nonspecific as the ALJ alleges, the vocational expert likely would have indicated as much or at least qualified his testimony regarding such in some way.

Finally, the ALJ's contention that Dr. Sheill based his opinion on an uncritical assessment of Plaintiff's subjective allegations is belied by the evidence. The doctor's examination consisted of a great many objective tests and assessments. (Tr. 343-48). Moreover, the doctor's report is notable for the paucity of comments regarding Plaintiff's subjective complaints or allegations. (Tr. 343-48). In short, there is nothing Dr. Sheill's report to suggest that his opinion was based on anything other than the objective results of his examination, which support his opinion. The ALJ cites to nothing in the record to support his contention to the contrary.

In sum, the ALJ's decision to discount Dr. Sheill's opinion is not supported by substantial evidence. Because Dr. Sheill is not a treating physician, the ALJ's failure to articulate good reasons for discounting such is not, by itself, necessarily grounds for relief. *See, e.g., Chandler v. Commissioner of Social Security*, 2014 WL 2988433 at *8 (S.D. Ohio, July 1, 2014). As previously noted, the vocational expert testified that the limitations articulated by Dr. Sheill preclude the performance of all work. In light of this testimony, the Court cannot conclude that there exists substantial evidence to support the ALJ's finding that there exists a significant number of jobs which Plaintiff can perform despite his limitations.

While the Court finds that the ALJ's decision fails to comply with the relevant legal standards, Plaintiff can be awarded benefits only if proof of his disability is "compelling." *Faucher v. Secretary of Health and Human Serv's*, 17 F.3d 171, 176 (6th Cir. 1994) (the court can reverse the Commissioner's decision and award benefits if all essential factual issues have been resolved and

proof of disability is compelling). While the ALJ's decision is not supported by substantial evidence, there does not exist *compelling* evidence that Plaintiff is disabled. Specifically, it is clear that Plaintiff suffers from a potentially serious degenerative condition. The record also suggests that Plaintiff's condition has, in fact, deteriorated over time. What is not clear, however, is whether Plaintiff's impairment and the limitations imposed by such satisfied, during the time period presently at issue, the relevant standard to obtain disability benefits. In sum, evaluation of Plaintiff's claim requires the resolution of factual disputes which this Court is neither authorized nor competent to undertake in the first instance. The undersigned recommends, therefore, that the Commissioner's decision be reversed and this matter remanded for further factual findings.

## CONCLUSION

For the reasons articulated herein, the undersigned concludes that the ALJ's decision is not supported by substantial evidence. Accordingly, it is recommended that the Commissioner's decision be **reversed and this matter remanded for further factual findings pursuant to sentence four of 42 U.S.C. § 405(g)**.

OBJECTIONS to this report and recommendation must be filed with the Clerk of Court within fourteen (14) days of the date of service of this notice. 28 U.S.C. § 636(b)(1)(C). Failure to file objections within such time waives the right to appeal the District Court's order. *See Thomas v. Arn*, 474 U.S. 140 (1985); *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981).

Respectfully submitted,

Date:  February 10, 2015          /s/ Ellen S. Carmody
                                  ELLEN S. CARMODY
                                  United States Magistrate Judge